**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KENNETH JOSEPH MAZUREK,

       Petitioner,

                                 CASE NO. 2:09-CV-11048

v.                               HONORABLE ARTHUR J. TARNOW

LLOYD W. RAPELJE,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY

Petitioner, Kenneth Joseph Mazurek, filed this action under 28 U.S.C. § 2254. He was convicted after a jury trial in the Arenac Circuit Court of involuntary manslaughter with a motor vehicle. MICH. COMP. LAWS 7750.321. The state trial court sentenced Petitioner as a third-time habitual felony offender to a prison term of fourteen years and three months to thirty years, and he is now imprisoned at the Saginaw Correctional Facility. Petitioner claims in his habeas application that: (1) he was erroneously prevented from presenting defense evidence; (2) the prosecutor committed misconduct; and (3) the sentencing guidelines were incorrectly scored. For the reasons that follow, the petition will be denied.

### I. Factual Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

Defendant's conviction arises from a single car accident in which Scott Pickvett, a passenger in defendant's vehicle, was killed. The accident occurred at approximately midnight on February 12, 2006. According to witnesses, defendant attended a party earlier that night and was drinking beer both at the party and while driving to the party. After the party, defendant went to a bar where he had a mixed drink. Defendant left the bar with Pickvett and Stacey Bouckaert. According to Bouckaert, after leaving the bar, defendant began driving crazy, swerving in and out of lanes and driving very fast. She became very scared and repeatedly begged defendant to let her drive. Another motorist, Scott Hidden, testified that defendant passed in front of his stopped vehicle at a high rate of speed before losing control and flipping over 2-1/2 times. Hidden estimated that defendant was traveling 65 to 70 mph in a 35-mph zone. An accident reconstructionist believed that defendant was traveling approximately 69 mph when he lost control and opined that the cause of the accident was excessive speed and possible alcohol usage. Defendant left the scene after the accident.

Defendant testified that he had consumed only one beer and part of a mixed drink before the accident, and denied being intoxicated. He claimed that he lost control of the vehicle because of icy road conditions and because Pickvett grabbed the steering wheel. He testified that he did not remember getting out of the car and leaving the accident scene because he sustained a head injury. His next recollection after the accident was waking up at the home of a friend, Richard Mendoza.

*People v. Mazurek*, 2008 Mich. App. LEXIS 1111, *1-2 (Mich. Ct. App. May 29, 2008).

Following his jury trial in which this evidence was presented, Petitioner was convicted of involuntary manslaughter with a motor vehicle. Petitioner filed a motion for a new trial. He asserted that the trial court erroneously excluded defense witnesses who would have testified that Petitioner suffered from a post-crash head injury. According to Petitioner, this evidence would have rebutted the prosecutor's argument that his flight from the scene of the accident indicted consciousness of guilt. At the hearing on the motion for new trial, Petitioner's appellate counsel requested to present these witnesses' testimony. The trial court denied the request to present the testimony but accepted the uncalled

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

witnesses' affidavits. The trial court then denied Petitioner's motion, finding that the

proposed testimony was irrelevant.

Petitioner thereafter filed his claim of appeal in the Michigan Court of Appeals,

raising the following issues:

> I. The erroneous ruling excluding Mr. Mazurek's defense witnesses denied
> defendant his constitutional rights to present a defense, to compulsory
> process, and to the presumption of innocence.
>
> II. The prosecutor's misconduct denied defendant a fair trial.
>
> III. Defendant was denied his right to be sentenced on the basis of accurate
> information because OV 3 and OV 18 were scored erroneously; the trial court
> improperly considered his failure to admit guilt, and he is entitled to a
> resentencing.

On May 29, 2008, the Michigan Court of Appeals affirmed Petitioner's conviction.

*Mazurek*, *supra*.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims.  The Michigan Supreme Court denied defendant's application for

leave to appeal on the ground that it was "not persuaded that the questions presented

should be reviewed by this Court."  *People v. Mazurek*, 482 Mich. 1033 (2008) (table).

Petitioner has now commenced this action, pursuant to 28 U.S.C. § 2254, raising

the same claims he raised in the State courts.

## II. Standard of Review

28 U.S.C. § 2254(d) bars habeas relief for claims adjudicated on the merits in state

court unless the state court adjudication runs contrary to clearly established Supreme Court

law, or if it results from an unreasonable application of that law or an unreasonable

3

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

determination of the facts. A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal-habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

### III. Discussion

#### A. Exclusion of Defense Witnesses

Petitioner's first claim asserts that the trial court's ruling prohibiting him from calling defense witnesses to testify about his condition after the accident violated his right to present a defense. Respondent contends that the Michigan Court of Appeals reasonably rejected this claim on the merits.

Federal law is clear on the right to present a defense. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, an accused in a criminal

4

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court gives trial court judges wide latitude to exclude certain evidence. *Id.* (quoting *Delaware*, 475 U.S. at 679).   A violation of the right to present a defense is not established by showing merely that the trial court excluded evidence relevant to a defense.   Rather, a petitioner must show that the exclusion of evidence "significantly undermined fundamental elements of the accused's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

Defendant first argues that the trial court erred by preventing him from calling several defense witnesses who would have testified concerning his post-accident injuries and state of mind, thereby denying him his constitutional right to present a defense and to compulsory process.  The trial court determined that evidence of post-accident events was not relevant and, therefore, barred defendant from calling the proposed witnesses.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v. McGhee*, 268 Mich. App. 600, 636 (2005).

A defendant has a constitutional right to present a defense and call witnesses. *People v. Anstey*, 476 Mich. 436, 460 (2006); *People v. Hayes*, 421 Mich. 271, 278-279 (1984); *People v. McFall*, 224 Mich. App. 403, 407 (1997).  But this right is not absolute, and the accused must still comply with established rules of procedure and evidence. *Hayes*, *supra* at 279.   All relevant evidence is generally admissible, and evidence which is not relevant is not admissible. Michigan Rule of Evidence 402. In *People v. Sabin (After Remand)*, 463 Mich. 43, 56-57 (2000), our Supreme Court discussed the concept of relevancy:

Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence thus is evidence that is material (related to

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence). Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense. A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy. [Citations and quotations omitted.]

In other words, evidence is admissible if it is helpful in shedding light on any material point. *People v. Aldrich*, 246 Mich. App. 101, 114; (2001).

In this case, the principal issue for the jury to decide was whether defendant operated his vehicle in a grossly negligent manner, thereby causing Pickvett's death. The prosecutor argued that defendant was grossly negligent because he drove his vehicle recklessly and at an excessive speed, and because he was under the influence of alcohol. At trial, the prosecutor introduced evidence that defendant left the accident scene, and suggested that this was evidence that defendant realized that he had done something wrong or knew that he was intoxicated. Conversely, defendant denied leaving the accident scene because of some consciousness of guilt, and instead claimed that he sustained a head injury, lost consciousness, and somehow ended up at a friend's house. The trial court later instructed the jury on flight, explaining that a person may run away or hide after an alleged crime for innocent reasons or because of a consciousness of guilt, and that it was up to the jury to decide this issue.

Considering the parties' theories, arguments, and instructions, we conclude that the reason why defendant left the accident scene was a fact of consequence to the action. The testimony of defendant's proposed witnesses was probative of that issue and, therefore, relevant. Accordingly, the trial court abused its discretion by precluding defendant from calling witnesses to offer testimony concerning defendant's physical condition and state of mind after the accident.

We conclude, however, that the error was harmless. When a constitutional error is preserved, a new trial is required unless it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *People v. Bauder*, 269 Mich. App. 174, 179 (2005).

Although defendant was not allowed to call witnesses to testify regarding his post-accident condition, defendant testified at trial that he

6

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

suffered a head injury and did not remember leaving the accident scene. Thus, evidence of this alternative explanation for why defendant left the scene was presented to the jury. Ultimately, however, the jury was not required to determine defendant's reasons for leaving the scene. Rather, it was required to determine whether defendant operated his vehicle in a grossly negligent manner, causing Pickvett's death. The evidence of defendant's gross negligence was overwhelming. That defendant was driving recklessly and substantially in excess of the speed limit was supported by the testimony of Bouckaert, a passenger in defendant's car, and Hidden, another motorist who witnessed the accident, and their testimony was in turn supported by the testimony of an accident reconstructionist. Additionally, another witness testified that defendant was drinking beer that whole night while at a party, and also while driving to the party, and an empty beer box and several empty beer cans were found in and alongside defendant's vehicle after the accident. Defendant testified that he had consumed a couple of drinks prior to the accident and was driving over the speed limit. None of defendant's proposed witnesses had any personal knowledge of the circumstances of the accident or the events leading up to the accident. Under these circumstances, we are persuaded beyond a reasonable doubt that the jury's verdict would have been the same even if defendant had presented witnesses who could have confirmed that defendant appeared disoriented from an apparent head injury after the accident. Therefore, reversal is not required.

*Mazurek*, 2008 Mich. App. LEXIS 1111, *2-7.

This Court agrees with the state appellate court that the trial court erred in excluding the defense evidence. The prosecutor argued that Petitioner fled from the scene following the accident and that this showed that he knew he had been driving recklessly and was conscious of his guilt. Petitioner wished to rebut this argument by presenting several witnesses to testify that Petitioner suffered from a head injured and was disoriented and confused. This evidence, if believed, would have suggested that Petitioner did not flee from the scene but wandered away from it due to his injuries.

The question here is not whether error occurred–because it did–it is whether the error had a substantial impact on the result of Petitioner's trial. In *Fry v. Pliler*, 551 U.S.

7

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

112, 121-22 (2007), the Supreme Court held that, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman v. California*, 386 U.S. 18 (1967)." 551 U.S. at 121-22 (citations omitted).  Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Fry*, 511 U.S. at 116 (quoting *Brecht*, 507 U.S. at 631).

Here, the error in excluding the defense evidence did not have a substantial and injurious effect in determining the jury's verdict.  To demonstrate that Petitioner was guilty of involuntary manslaughter, the prosecutor was required to prove that Petitioner committed an unlawful act with intent to injure, or committed an act in a grossly negligent manner proximately causing death. MICH. COMP. LAWS §750.321(c); *People v. Datema*, 448 Mich. 585 (1995). Gross negligence requires: (1) knowledge of a situation requiring the exercise of ordinary care to avoid injury to another; (2) the ability to avoid the resulting harm by ordinary care; and (3) the omission to use such care to avoid the threatened danger when to an ordinary mind it must have appeared that the omission will likely result in the injury.  *People v. McCoy*, 223 Mich.App. 500, 503 (1997).

The evidence showed that Petitioner was drinking before the accident.  A witness who was with Petitioner that evening testified that Petitioner was drinking before the party, was drinking in the car on the way to the party, had a beer in his hand the whole time he

8

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

was at the party, and had at least one mixed drink later at the bar.  Petitioner's alcohol use on the evening in question was corroborated by other witnesses as well.

The surviving victim testified that Petitioner's car started weaving as soon as he left the bar.  She testified that Petitioner was swerving in and out of lanes as he drove down the highway towards Standish.  She begged for Petitioner to let her drive, but he refused. The deceased passenger also yelled at Petitioner to slow down just before the car approached the final curve into Standish.

An accident reconstructionist and an eyewitness at the scene of the accident testified that Petitioner was driving between 65 and 70 mph in a 35 mph zone as he as he tried to negotiate the curve.   The eyewitness testified that he could see that Petitioner would not be able to make the curve at such a high rate of speed.  He then saw the car hit a guardrail and flip over two times.

Given this evidence, the elements of involuntary manslaughter were overwhelmingly met.  Petitioner knew he was driving in a dangerous manner because he had been swerving in and out of lanes and both of his passengers begged him to stop.  He knew he was having a difficult time driving his car as soon as he left the bar, and he admitted that he had driven down this highway and taken the curve into Standish thousands of times before.  He had the ability to avoid the crash by exercising ordinary care - either by stopping to let someone else drive or by simply slowing down himself.  Yet Petitioner failed to exercise that ordinary care when it must have been apparent to him that he was likely to crash and cause injury.

9

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

While Petitioner's post-accident conduct was used by the prosecutor to suggest that Petitioner was conscious of his guilt, it was not a critical factor in the trial. The virtually unchallenged evidence showed that Petitioner was operating his vehicle in a grossly negligent manner, resulting in the death of the victim. Moreover, the excluded evidence consisted of the lay opinion testimony of Petitioner's friends. They were not at the scene and could not have testified in a convincing way that Petitioner wandered away from the scene as a result of his injuries and not because he fled.

In light of the overwhelming evidence of Petitioner's guilt, and the relatively low exculpatory value of the excluded evidence, Petitioner has not demonstrated that the error in excluding the evidence had a substantial impact on the result of his trial. Petitioner's first claim is therefore denied.

### B.  Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed acts of misconduct that rendered his trial fundamentally unfair. These claims do not have merit.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d at 529 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S.

10

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).  If a prosecutor's statements were neither individually nor collectively prejudicial to Petitioner, then a state court decision rejecting the claim is reasonable and survives §2254(d) review.  *Batey v. Scutt*, 2012 U.S. App. LEXIS 2710 (6th Cir. 2012).  Finally, in deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

The Michigan Court of Appeals denied Petitioner's claim as follows:

> Defendant raises several claims of prosecutorial misconduct. Questions of misconduct by the prosecutor are decided case by case. This Court examines the pertinent portion of the record and evaluates the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *People v. Legrone*, 205 Mich. App. 77, 82-83 (1994).  Unpreserved claims of misconduct are reviewed for plain error affecting substantial  rights. *People v. Barber*, 255 Mich. App. 288, 296 (2003).

> The prosecutor's questioning of Bouckaert and Hidden with regard to whether defendant was driving in a manner that disregarded the safety of others was not improper.  Their opinion testimony was permissible under Michigan Rule of Evidence 701, which allows opinion testimony from lay witnesses if it is rationally based on their perceptions and is helpful to a clear understanding of a fact in issue. *People v. Daniel*, 207 Mich. App. 47, 57 (1994).

11

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

Next, the prosecutor did not violate *People v. Johnson*, 54 Mich. App. 678, 680 (1974), in which this Court held that a prosecutor may not interrogate a defendant about the collateral facts comprising a prior conviction that the defendant has acknowledged on direct examination. Defendant testified on direct examination that he had a prior "conviction" for "B & E and a home invasion."   The prosecutor merely clarified on cross-examination that this involved two separate felony convictions. Further, because the prior convictions were a matter of evidence, the prosecutor properly could comment on them in closing argument and argue that defendant was not worthy of belief. *People v. Dobek*, 274 Mich. App. 58, 67(2007).

Defendant also argues that the prosecutor improperly asked him to comment on the credibility of other prosecution witnesses.   There was, however, no objection to the prosecutor's examination at trial. Moreover, viewed in context, the prosecutor was merely seeking to ascertain which facts were in dispute, which is proper. *People v. Ackerman*, 257 Mich. App. 434, 449 (2003).  Thus, there was no plain error.

The prosecutor did not misstate the testimony of Pierson and Bouckaert by stating that Pierson testified that defendant was pounding down beers and drinking the whole time at the party, and that Bouckaert testified that it was obvious that defendant was drunk.  At trial, Pierson testified that defendant was drinking beers while driving to the party and then the "whole night" while at the party.  Bouckaert similarly testified that defendant was drinking that night and that she told the police that defendant had consumed alcohol and she knew that he should not be driving.   The prosecutor's remarks were properly based on the evidence and reasonable inferences from the evidence. *People v. Watson*, 245 Mich. App. 572, 588 (2001).

Further, the prosecutor did not improperly denigrate defense counsel by asking the jury in his rebuttal closing argument to disregard defendant's close friendship with the decedent, and by characterizing defense counsel's "friendship argument" as a red herring designed to distract the jury from the actual issue in the case.  The prosecutor's remarks were responsive to an issue that defense counsel raised in his closing argument, and were intended to keep the jury focused on the issues the jury was required to decide.  There was no plain error. *Id.* at 592-593.

Next, we find no merit to defendant's argument that the prosecutor made an improper comment concerning disposition or punishment. *See People v. Goad*, 421 Mich. 20, 25 (1984). The prosecutor merely referred to the jury's option of finding defendant guilty of the lesser offense of negligent

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

homicide and asked the jury to find defendant guilty of the greater charged offense. There was no plain error.

Lastly, we reject defendant's argument that the prosecutor improperly shifted the burden of proof by commenting on defendant's failure to provide evidence corroborating his testimony that he suffered a head injury in the accident. We agree that the prosecutor should have avoided such an argument in this case considering that defendant was precluded from presenting witnesses who could have given testimony supportive of his claim of a head injury; nonetheless, there was no objection. Defendant has not established that his substantial rights were affected by the prosecutor's argument, where the evidence supporting the verdict was overwhelming. *Barber*, *supra* at 296.

*Mazurek*, 2008 Mich. App. LEXIS 1111, *7-11.

This decision did not involve an unreasonable application of the clearly established constitutional standard. First, the state court correctly found that the prosecutor's elicitation of witnesses' opinion as to whether Petitioner was driving dangerously was proper. The state court found that the lay opinion evidence was admissible as a matter of state law. Because the state appellate court found that the testimony was admissible, the prosecutor's actions could not have amounted to misconduct. *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997). As the Sixth Circuit explained, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).

The same thing holds true with Petitioner's next allegation. The prosecutor was permitted under state law to inquire from Petitioner whether his two prior convictions involved different criminal transactions. There was nothing wrong with the prosecutor seeking this clarification of Petitioner's direct examination testimony.

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

The state appellate court reasonably interpreted the record with respect to the claim that Petitioner was asked to comment of the credibility of prosecution witnesses. Although the prosecutor used inflammatory terms like "lie" and "conspiracy" regarding Petitioner's view of the prosecution witnesses, the questions can be reasonably interpreted as an attempt by the prosecutor to ferret-out the parts of the prosecution witnesses' testimony that Petitioner disputed. While the language used by the prosecutor crossed the line in the view of this Court, the rejection of the claim by the Michigan Court of Appeals was not objectively unreasonable.

Next, the prosecutor did not incorrectly characterize the testimony of witnesses regarding his consumption of alcohol. A prosecutor may argue reasonable inferences from the record. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's description of Petitioner and the deceased victim as "pounding down beers" was a reasonable inference drawn from the testimony.

The prosecutor's statement that defense counsel's reference to the deceased victim being Petitioner's friend as a "red herring" was not improper. *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992). The argument was a response to the improper suggestion by defense counsel that the case should be decided based on sympathy for the fact that Petitioner lost his friend in the accident.

Nor did the prosecutor commit misconduct by asking the jury not to convict Petitioner of the lesser offense of negligent homicide. The prosecutor characterized negligent homicide as "a much lesser offense" that would be "an injustice to the system." But he did

14

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

not mention the difference in penalties or suggest that the lesser verdict should be avoided for an improper reason. Rather, the prosecutor responded to the suggestion that jury should convict Petitioner of the lesser offense out of sympathy for him. The argument focused on the differences between gross negligence and ordinary negligence and why the prosecutor believed Petitioner's actions amounted to gross negligence.

Lastly, the Court finds that it was improper for the prosecutor to assert that Petitioner had failed to provide any evidence to corroborate his claim that he suffered from a head injury. As the prosecutor well knew, Petitioner desired to offer such corroborating evidence in the form of lay opinion testimony but was prevented from doing so precisely because the prosecutor objected to the introduction of that testimony. That said, this improper argument did not render Petitioner's trial unfair for the reasons stated above. The evidence of Petitioner's guilt was overwhelming and the precluded evidence-which allowed the improper argument to be made–would have done little to counter the argument that Petitioner fled the scene.

Accordingly, Petitioner's second claim does not support the grant of habeas relief.

## B.  Sentencing Guidelines

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also See Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell*

15

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

*v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.*

Petitioner's claim that the trial court improperly considered his refusal to admit guilt is likewise without merit.  A defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.'" *Estelle v. Smith*, 451 U.S. 454, 468 (1981)(quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). In *Mitchell v. United States*, 526 U.S. 314, 328-30 (1999), the United States Supreme Court extended the right against self-incrimination to sentencing and held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime.  It is, however, permissible for a judge to consider a defendant's lack of remorse at sentencing, *See e.g. United States v. Kennedy*, 499 F. 3d 547, 552 (6th Cir. 2007).

Here, the sentencing judge did not use Petitioner's silence against him in determining sentence.  Rather, the court noted that Petitioner continued to blame the accident on the icy road conditions and the actions of the victims.  It also noted that Petitioner had previously been placed on probation but could not follow the rules.  The trial

16

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

court's comments, taken in context, suggest that the court was refuting Petitioner's excuses and commenting upon his lack of remorse and potential for rehabilitation, rather than penalizing him for any refusal to admit guilt at the time of trial or sentencing. *See Paluskas v. Bock*, 410 F. Supp. 2d 602, 615 (E.D. Mich. 2006) (denying habeas relief on similar claim).

Petitioner's third claim is therefore without merit.

## IV. Certificate of Appealability

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court grants Petitioner a Certificate of Appealability with respect to all of his claims because he has made a substantial showing of the denial of a federal constitutional right. Jurists of reason could find this Court's resolution of Petitioner's claims to be

17

*Mazurek v. Rapelje*, U.S.D.C. No. 2:09-CV-11048

debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,*

205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission to

proceed on appeal in forma pauperis  is **GRANTED.**


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: February 22, 2012


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 22, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

18